**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT LOUISVILLE**

JEROME WALLS, MARY BROWN, DANNY
BROWN, ROLENA WILLIAMS, JOSEPH
CASCIO , CAROL CASCIO, and LIDIA
NATHANSON, as individuals and as
representatives of the classes,

                         PLAINTIFFS

v.

JPMORGAN CHASE BANK, N.A., in its own
capacity and as successor by merger to CHASE
HOME FINANCE, LLC and BANK ONE, N.A.,
CHASE INSURANCE AGENCY, INC., in its
own capacity and as a successor to JPMORGAN
INSURANCE AGENCY, INC., and AMERICAN
SECURITY INSURANCE CO.,

                         DEFENDANTS

Case No.: 3:11-CV-00673-DJH

**ELECTRONICALLY FILED**

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR APPROVAL OF
ATTORNEYS' FEES AND EXPENSES, SETTLEMENT ADMINISTRATION
EXPENSES, AND CLASS REPRESENTATIVE SERVICE AWARDS**

# TABLE OF CONTENTS

INTRODUCTION ....................................................................................................... 1

BACKGROUND ........................................................................................................ 2

I.    BACKGROUND RELATING TO THE PRESENT ACTION .......................................... 2

II.   EXTENDED SETTLEMENT NEGOTIATIONS AND RELATED DISCOVERY ................ 4

III.  SUMMARY OF SETTLEMENT BENEFITS ............................................................... 5

IV.   SETTLEMENT APPROVAL AND REACTION OF CLASS MEMBERS ......................... 7

ARGUMENT ............................................................................................................. 8

I.    THE REQUESTED ATTORNEYS' FEES AND EXPENSES SHOULD BE AWARDED ....... 8

      A.    The Requested Attorneys' Fees are Reasonable ..................................... 8

            1.    The Requested Fees Are a Modest Percentage of the Total Recovery .... 9

            2.    The Requested Fees Are *Less* than Class Counsel's Lodestar ........... 10

            3.    Other Relevant Factors Support the Requested Fees ....................... 12

                  a.    Class Counsel Secured Significant Benefits for the Classes ....... 13

                        i.    Monetary Relief ........................................... 13

                        ii.   Prospective Relief ......................................... 15

                  b.    Class Counsel Provided Valuable Services to the Class ....... 15

                  c.    Class Counsel Undertook the Representation on a Contingent Basis
                        and Faced Substantial Risks ................................... 15

                  d.    Awarding the Requested Fees Will Maintain an Incentive to Others
                        to Pursue Socially Useful Class Litigation ..................... 18

                  e.    Lender-Placed Insurance Litigation Is Complex ................ 19

                  f.    Class Counsel Is Highly Skilled and Experienced in Lender-Placed
                        Insurance Litigation ......................................... 20

                  g.    The Requested Fee Award Is *Inclusive* of Costs ............... 21

i

        h.      No Class Members Have Objected to the Requested Fees .......... 22

II.    THE REQUESTED SETTLEMENT ADMINISTRATION EXPENSES SHOULD BE APPROVED .. 22

III.   THE REQUESTED SERVICE AWARDS SHOULD BE APPROVED ............................. 23

CONCLUSION .................................................................................................. 25

# TABLE OF AUTHORITIES

Cases

*Arnett v. Bank of America, N.A.*, No. 3:11-cv-01372, Dkt No. 270 (D. Or. Aug. 26, 2014) .........14

*Arnett v. Bank of America, N.A.*, 2014 WL 4672458 (D. Or. Sept. 18, 2014) ........................14

*Basile v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 640 F.Supp. 697 (S.D.Ohio 1986) .........13

*Boeing Co. v. Van Gemert*, 44 U.S. 472 (1980) .................................................................9

*Casey v. Citibank, N.A.*, 915 F. Supp. 2d 255 (N.D.N.Y. 2013) .................................16, 17

*Clements v. JPMorgan Chase Bank, N.A.*, 2014 WL 2804003 (N.D. Cal. May 16, 2014) ......4, 24

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ......................................13

*Cohen v. Am. Sec. Ins. Co.,* 735 F.3d 601 (7th Cir. 2013) ...........................................16, 19

*Decambaliza v. QBE Holdings, Inc.*, 2013 WL 5777294 (W.D. Wis. Oct. 25, 2013) ..............16

*Dick v. Sprint Communications Co. L.P.*,

      297 F.R.D. 283 (W.D. Ky. 2014) ..............................9, 10, 12, 13, 15, 18, 23, 24

*Ellsworth v. U.S. Bank, N.A.*, 908 F. Supp. 2d 1063 (N.D. Cal. 2012) ............................16

*Ellsworth v. U.S. Bank, N.A.*, 2014 WL 2734953 (N.D. Cal. June 13, 2014) ..............17, 18, 20

*Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*,

      137 F.R.D. 240 (S.D.Ohio 1991) .............................................................23

*Feaz v. Wells Fargo Bank, N.A.*, 745 F.3d 1098 (11th Cir. 2014) ........................16, 17, 19

*Fournier v. PVS Invs., Inc.*, 997 F. Supp. 2d 828 (E.D. Mich. 1998) ...............................10

*Gascho v. Global Fitness Holdings*, LLC, 822 F.3d 269 (6th Cir. 2016) ....................8, 9, 11

*Gooden v. Suntrust Mortg.,* 2013 WL 6499250 (E.D. Cal. Dec. 11, 2013) .........................17

*Gordon v. Chase Home Fin., LLC*, 2013 WL 436445 (M.D. Fla. Feb. 5, 2013) ....................17

*Gustafson v. BAC Home Loans Servicing, LP*, 294 F.R.D. 529 (C.D. Cal. 2013) ....................17

*Hofstetter v. Chase Home Fin., LLC*, 2011 WL 1225900 (N.D. Cal. Mar. 31, 2011) ..........17, 20

*In re Cardizem CD Antitrust Litigation,* 218 F.R.D. 508 (E.D. Mich. 2003) .................... 18, 21, 22

*In re Checking Account Overdraft Litig.*, 830 F.R.D. 1330 (S.D. Fla. 2011) ............................... 13

*In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010) ............................... 2

*In re Polyerethane Foam Antitrust Litig.*, --- F. Supp. 3d ---,

      2016 WL 1452005 (N.D. Ohio Apr. 13, 2016) ............................... 10

*In re Rio Hair Naturalizer*, 1996 WL 780512 (E.D. Mich. Dec. 20, 1996) ............................... 18

*In re Rite Aid Corp. Sec. Litig.,* 146 F.Supp.2d 706 (E.D. Pa. 2001) ............................... 13

*In re Sketchers Toning Shoe Prods. Liability Litig.*, 2012 WL 3312668 (W.D. Ky. 2012) .......... 10

*In re Telectronics Pacing Systems*, Inc., 137 F.Supp.2d 1029 (S.D.Ohio 2001) .......................... 16

*Johnson v. Brennan*, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) ............................... 13

*Kolbe v. BAC Home Loans Servicing, L.P.*, 2011 WL 3665394 (D. Mass. Aug. 18, 2011) .......... 19

*Kolbe v. BAC Home Loans Servicing, L.P.*, 695 F.3d 111 (1st Cir. 2012) ............................... 19

*Kolbe v. BAC Home Loans Serv., LP*, 738 F.3d 432 (1st Cir. 2013) ............................... 17, 19

*Kunzelmann v. Wells Fargo Bank, N.A.*, 2013 WL 139913 (S.D. Fla. Jan. 10, 2013) ................ 17

*Lacroix v. U.S. Bank, N.A.*, 2012 WL 2357602 (D. Minn. June 19, 2012) ............................... 17

*Lane v. Wells Fargo Bank, N.A.*, 2013 WL 3187410 (N.D. Cal. June 21, 2013) .......................... 17

*Lass v. Bank of America, N.A.*, 695 F.3d 129 (1st Cir. Sept. 21, 2012) ............................... 17, 19, 20

*Leghorn v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 1093 (N.D. Cal. 2013) .......................... 16

*Masters v. Willhelmina Model Agency, Inc*., 473 F.3d 423 (2d Cir. 2007) ............................... 9

*McKenzie v. Wells Fargo Bank, N.A.*, 2012 WL 5372120 (N.D. Cal. Oct. 30, 2012) ................ 17

*McNeary-Calloway v. JP Morgan Chase Bank, N.A.*, 863 F. Supp. 2d 928 (N.D. Cal. 2012) ..... 16

*Montanez v. HSBC Mortg. Corp. (USA)*, 876 F. Supp. 2d 504 (E.D. Pa. 2012) .......................... 16

*Montoya v. PNC Bank, N.A.*, 2014 WL 4248208 (S.D. Fla. Aug. 27, 2014) .......................... 16

*Morris v. Wells Fargo Bank N.A.*, 2012 WL 3929805 (W.D. Pa. Sept. 7, 2012) ...................... 17

*Moulton v. U.S. Steel Corp.*, 581 F.3d 344 (6th Cir. 2009) ...................... 9

*Newbridge Networks Sec. Litig.*, 1998 WL 765724 (D.D.C. Oct. 23, 1998) ...................... 13

*Physicians of Winter Haven LLC v. Steris Corp.*,

     2012 WL 406966 (N.D. Ohio Feb. 6, 2012) ...................... 9, 10

*Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188 (6th Cir.1974) ...................... 12, 13, 15, 19

*Rapp v. Green Tree Servicing, LLC*, 2014 WL 3846032 (D. Minn. Aug. 5, 2014) ...................... 17

*Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513 (6th Cir. 1993) ...................... 8, 9, 11

*Richards v. RBS Citizens, N.A.*, No. 1:12-cv-00239, Dkt. No. 21 (D.R.I. Oct. 10, 2012) ...................... 17

*Rothstein v. Balboa Ins. Co.*, 794 F.3d 256 (2d Cir. 2015) ...................... 16, 19

*Saccoccio v. JPMorgan Chase Bank, N.A.*, 297 F.R.D. 683 (S.D. Fla. 2014) ...................... 18, 24

*Simpkins v Wells Fargo Bank, N.A.*, 2013 WL 4510166 (S.D. Ill. Aug 26, 2013) ...................... 16

*Singleton v. Domino's Pizza*, No. 8:11-cv-01823, Dkt. No. 82 (D. Md. Oct. 2, 2013) ...................... 12

*Singleton v. Wells Fargo Bank, N.A.*, 2013 WL 5423917 (N.D. Miss. Sept. 26, 2013) ...................... 16

*Skansgaard v. Bank of Am., N.A.*, 896 F. Supp. 2d 944 (W.D. Wash. 2011) ...................... 17

*Staton v. Boeing Co*, 327 F.3d 938 (9th Cir. 2003) ...................... 15

*Williams v. Wells Fargo Bank, N.A.*, 2011 WL 4901346 (S.D. Fla. Oct. 14, 2011) ...................... 16

*Williams v. Wells Fargo Bank, N.A.*, 280 F.R.D. 665 (S.D. Fla. 2012) ...................... 17

*Wulf v. Bank of Am., N.A.*, 798 F. Supp. 2d 586 (E.D. Pa. 2011) ...................... 17

<u>Rules and Statutes</u>

Fed. R. Civ. P. 23(h) ...................... 1, 8

Fed. R. Civ. P. 54(d)(2) ...................... 1

Other Authority

H. Newberg, ATTORNEY FEE AWARDS § 2.19 (1986) .................................................21

Loans in Areas Having Special Flood Hazards; Interagency Questions & Answers Regarding

Flood Insurance, 74 Fed. Reg. 35914, 35940 (July 21, 2009) ("2009 Interagency Q&A") ............7

## INTRODUCTION

Pursuant to Fed. R. Civ. P. 23(h) and 54(d)(2), and in accordance with this Court's Order granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement (ECF No. 127), Plaintiffs Jerome Walls, Mary Brown, Danny Brown, Rolena Williams, Joseph Cascio, Carol Cascio, and Lidia Nathanson ("Plaintiffs") respectfully submit this Memorandum of Law in Support of their Motion for Approval of Attorneys' Fees and Expenses, Settlement Administration Expenses, and Class Representative Service Awards.  Consistent with Paragraphs 37 - 40 of the Class Action Settlement Agreement between Plaintiffs and Defendants JPMorgan Chase Bank, N.A. ("Chase"), Chase Insurance Agency ("CIA"), and American Insurance Company ("ASIC") (together "Defendants"), Plaintiffs seek Court approval of the following payments in connection with the Settlement:

- attorneys' fees and expenses to Class Counsel[1] in the amount of $650,000 (combined);

- service awards to the named Plaintiffs in the amount of $5,000 per household; and

- settlement administration expenses to the designated claims administrator, Analytics, LLC, in the amount of $76,730.

The requested fees, expenses, and service awards are specifically authorized by the Settlement Agreement (which the Court has preliminarily approved), and are reasonable for the reasons set forth below.  Indeed, the amount requested by Class Counsel is *less* than Class Counsel's combined lodestar, and represents less than 10% of the total amount of funds made available to class members under the settlement (far below the Sixth Circuit benchmark).  Moreover,

---

[1] Class Counsel in this matter consists of Nichols Kaster, PLLP ("Nichols Kaster"), Beasley, Allen, Crow, Methvin, Portis & Miles, P.C. ("Beasley Allen"); C.W. Walker III, LLC ("Walker Law"); and Meyer Wilson, Co., LPA ("Meyer Wilson").  In addition, Barbara D. Bonar serves as local counsel.

Defendants have agreed to pay the requested amounts on top of other monetary relief to the Settlement Class, so *the refunds received by Settlement Class Members will not be reduced by the requested payments*. Accordingly, Plaintiffs respectfully request that this Court grant their motion and approve the requested distributions. As of the date of this motion, *no Settlement Class Member has objected to the proposed awards* or any other aspect of the Settlement in response to the Notice of Settlement.[2]

## BACKGROUND

### I.   BACKGROUND RELATING TO THE PRESENT ACTION

Plaintiff Jerome Walls filed this Action on December 7, 2011, alleging that borrowers with home equity lines of credit ("HELOCs") acquired by Chase through Bank One, N.A. ("Bank One") were improperly required to purchase excessive amounts of flood insurance and/or were improperly charged for Lender-Placed Flood Insurance ("LFPI"). *Settlement (ECF No. 131-1), ¶ 3; see also ECF No. 1.*[3] On July 30, 2012, the Court issued an Order denying Chase's Motion to Dismiss, *ECF No. 33*, and Plaintiff Walls subsequently filed a First Amended Complaint on October 9, 2012 adding Mary Brown, Danny Brown, and Rolena Williams as additional named Plaintiffs, adding CIA as a Defendant, and expanding the scope of the putative

---

[2] The Notice of Settlement (including the terms relating to attorneys' fees, expenses, and service awards) was sent to Class Members on June 17, 2016. *See Declaration of Richard Simmons ("Simmons Decl.")*, ¶ 9. In accordance with this Court's Preliminary Approval Order, Plaintiffs are filing the present motion prior to the deadline for objections (August 16, 2016) so that Class Members have an opportunity to review it, if they wish to do so, before deciding whether to file an objection. *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993 (9th Cir. 2010) (stating that such motions should be filed before the deadline to object has passed). If any objections are ultimately filed, they will be addressed in connection with Plaintiffs' motion for final approval of the Settlement.

[3] As to the charges for LPFI, Walls alleged (and continues to allege) that Chase "acted in bad faith by attempting to purchase force-placed flood insurance coverage through one of its affiliates at an inflated premium, instead of through an independent insurance broker, in order to earn a commission for its affiliate. *ECF No. 1, ¶ 24.*

class in the action to include borrowers with home equity loans ("HELs") acquired by Chase from Bank One. *Settlement, ¶ 3; see also ECF No. 39.*

While this Action was pending, Plaintiffs Joseph and Carol Cascio filed a separate action against Chase on June 11, 2012 in the Southern District of Ohio, captioned *Cascio v. JPMorgan Chase Bank, N.A.*, No. 2:12-cv-00514 (S.D. Ohio) ("the Cascio Action"), which asserted similar claims in connection with other HELs. *See Settlement, ¶ 4.* That action was not specific to HELs acquired by Chase from Bank One. *Id.*

On August 4, 2014, Plaintiffs filed a Consolidated Second Amended Complaint, joining the Cascios as Plaintiffs in this Action, and also joining ASIC as an additional named Defendant. *Id., ¶ 13; see also ECF No. 73-1.*[4] On June 1, 2015, Plaintiffs filed a Third Amended Complaint ("TAC") joining Lidia Nathanson as an additional named Plaintiff. *Settlement, ¶ 13; see also ECF No. 103.* The TAC asserted four claims against Defendants: (1) a statutory claim against Chase for violation of the Truth-In-Lending Act ("TILA"); (2) a common law claim against Chase for breach of contract/breach of the implied covenant of good faith and fair dealing; (3) an unjust enrichment claim against CIA and ASIC; and (4) a statutory claim against all three Defendants under the Racketeer Influenced and Corrupt Organizations Act ("RICO Act"). *ECF No. 103, Counts 1-4.* Shortly thereafter, Plaintiffs and Defendants finalized a comprehensive Class Action Settlement Agreement (after extended settlement negotiations), and filed a Motion for Preliminary Approval of the Settlement on June 4, 2015. *See ECF No. 107.* That Settlement was preliminarily approved by the Court on May 5, 2016. *See ECF No. 125.*[5]

---

[4] Upon joining the present action, the Cascios dismissed their separate action in the Southern District of Ohio without prejudice.

[5] A corrected order was later issued on May 23, 2016, to correct a scrivener's error. *See ECF No. 127.*

## II.   EXTENDED SETTLEMENT NEGOTIATIONS AND RELATED DISCOVERY

After the Court denied Chase's Motion to Dismiss, the Parties began exploring a possible settlement. *See Declaration of Kai Richter in Support of Motion for Preliminary Approval of Class Action Settlement ("First Richter Decl."), ECF No. 113, ¶ 12.* These settlement negotiations were facilitated by the fact that Plaintiffs' counsel had previously litigated and resolved another LPFI case against the Chase, *Hofstetter v. Chase Home Finance, LLC*, No. 3:10-cv01313 (N.D. Cal.), following certification of that action as a class action. *First Richter Decl., ¶ 13.* Moreover, prior to the settlement of the present action, the Parties also had the benefit of several court decisions and settlements in other lender-placed insurance cases, which allowed them gauge the strength and weaknesses of the claims and defenses in this case and assess the value of the case for purposes of settlement. *Id., ¶ 14.* Three of those lender-placed insurance settlements also involved Chase as a defendant. *Id.* (citing *Saccoccio v. JPMorgan Chase Bank, NA*, No. 1:13-cv-21107 (S.D. Fla.); *Clements v. JPMorgan Chase Bank, N.A.*, No. 3:12-cv-02179 (N.D. Cal.); *Pulley v. JPMorgan Chase Bank, N.A.*, No. 12-CV-6093 (S.D. Fla.)).

To facilitate their negotiations, the Parties retained the Honorable Morton Denlow as a mediator. *First Richter Decl., ¶ 15.*[6] Prior to the mediation, Defendants produced an extensive set of class data to Class Counsel for settlement purposes, which contained information related to relevant customers with HELs and HELOCs, including (among other things): (a) the available credit associated with each HELOC and the outstanding principal balance associated with each HEL; (b) the dates that initial cycle letters were sent on Chase's behalf demanding flood insurance or additional flood insurance coverage; (c) the amount of any flood insurance purchased by the customer after receiving a cycle letter; (d) the amount of any LPFI purchased

---

[6] Judge Denlow is an experienced and well-respected mediator who formerly served as a Magistrate Judge in the Northern District of Illinois and currently serves a mediator with JAMS. *Id.*

by Chase; and (e) the premiums associated with LPFI coverage. *Id., ¶ 16*; *Settlement, ¶ 6.* Class Counsel retained an experienced damages expert, Arthur Olson, to evaluate and analyze this Class Data. *Id.* In addition, Class Counsel had access to voluminous discovery from the prior *Hofstetter* lawsuit. *First Richter Decl.*, *¶ 17; Settlement, ¶ 7.* Among other things, this discovery included: (a) Chase's policies and procedures relating to flood insurance; (b) relevant contracts between the Chase Defendants and ASIC relating to flood insurance tracking, LPFI, and the commissions that were paid to Chase's affiliates on LPFI; and (c) deposition testimony from several witnesses. *First Richter Decl., ¶ 17*; *Settlement, ¶ 7.*

After Class Counsel analyzed the class data and relevant prior discovery produced by Chase, the Parties submitted mediation statements and participated in a full-day mediation session with Judge Denlow on January 28, 2014. *First Richter Decl., ¶ 18; Settlement, ¶ 8.* Although the Parties were unable to reach an agreement by the end of the mediation session, the Parties agreed that sufficient progress was made to warrant further settlement discussions. *Id., ¶ 19*; *Settlement, ¶ 8.* In connection with those continued settlement discussions, Defendants supplemented their production of class data over the course of several months. *Id., ¶ 19*; *Settlement, ¶ 9.* After Class Counsel reviewed this supplemental data, the Parties reached a settlement-in-principle on all material settlement terms on February 3, 2015. *First Richter Decl.*, *¶ 19; see also ECF No. 97.*

## III.   SUMMARY OF SETTLEMENT BENEFITS

As set forth in Plaintiffs' preliminary approval motion papers, the Settlement provides for substantial monetary and prospective relief. In summary, the Settlement calls for certification of two nationwide Settlement Classes of HEL and HELOC borrowers – a "Commissions Class" and an "Excess Coverage Class." *See Settlement ¶ 2(q), (u).* Members of the Commissions Class

who timely file a claim with the Claims Administrator will receive a Settlement Payment equal to 75 percent of any commissions received by CIA or any other Chase affiliate on LPFI premiums that were charged to their HEL or HELOC account for LPFI coverage within the time period in the class definition. *Id at ¶ 24(a).* Eligible Claimants in the Excess Coverage Class will receive a flat refund of $325. *Id at ¶ 24(b).* This relief is cumulative, *i.e.,* Eligible Claimants who fall within both the Commissions Class and the Excess Coverage Class will be entitled to both types of Settlement Payments. *Id at ¶ 24.*[7] The total amount available to the class under the Settlement is approximately $5,746,138. *See infra* at 14.

In addition to the foregoing monetary relief, the Settlement also provides for significant prospective relief. Specifically, the Settlement provides that "for a period of five (5) years from Effective Date, the Chase Defendants and their affiliates shall not accept any commissions or other compensation (except payments on property damage claims) in connection with LPFI coverage for residential property securing a HEL or HELOC, and ASIC and its affiliates shall not offer or provide any such commissions or other compensation to the Chase Defendants or their affiliates." *Id. at ¶ 33.* In addition, the Settlement provides that for a period of five (5) years from Effective Date, Chase shall not require flood insurance coverage in excess of the "Minimum Flood Insurance Coverage Amount" for one-to-four family unit residential property securing a HEL or HELOC. *Id. at ¶ 34.* This is defined as the *lesser* of the following amounts:

---

[7] Eligible Claimants who attest on the Claim Form that they paid any portion of the applicable insurance (LPFI for Commissions Class Members; LPFI or self-purchased flood insurance for Excess Coverage Class Members) will receive their Settlement Payment by check. *Id. at ¶ 27.* Eligible Claimants who do not attest that they paid any applicable insurance premiums, but who have an active HEL or HELOC with Chase, will receive their Settlement Payment via either an escrow credit or a check, at Chase's option. *Id.* Any Settlement Class Members who do not attest that they paid any portion of the applicable insurance and who also do not attest that they have an active HEL or HELOC with Chase will not be entitled to receive a settlement payment or escrow credit.

- The maximum amount of flood insurance coverage available through the National Flood Insurance Program (currently $250,000 for residential structures);

- 100% of the replacement cost value of the dwelling and insurable improvements; or

- The customer's unpaid principal balance (for HELs) or credit line amount (for HELOCs), plus the amount of any other lien(s) secured by the property.

*Id. at ¶ 2(bb).* This is the minimum amount of flood insurance coverage allowed by federal law for borrowers with secured property in a special flood hazard area ("SFHA").[8] Given that many Settlement Class Members have active accounts and long-term mortgages with Chase, the value of this prospective relief is substantial. *Id., ¶ 36.*

As an added benefit to Class Members, the Settlement provides that Defendants shall pay Class Counsel's attorneys' fees and expenses (up to $650,000), all expenses of administering the Settlement (up to $100,000), and modest service awards to the named Plaintiffs (up to $5,000 per household), subject to the approval of the Court. *Settlement, ¶¶ 37- 40.* As a result, **Class members' refunds will not be subject to deduction for any attorneys' fees, expenses, or class representative service awards**. *First Richter Decl.*, *¶ 7.*

## IV.   SETTLEMENT APPROVAL AND REACTION OF CLASS MEMBERS

As noted above, the Court granted preliminary approval of the Settlement on May 5, 2016. *See supra* at 3. In its Preliminary Approval Order, the Court found that "the settlement was reached through negotiations between capable counsel[,]" *ECF No. 127 at 4*, and further found that "the potential relief outlined in the proposed settlement appears reasonable." *Id. at 5.*

---

[8] With respect to the third option, other liens on the property must be considered because the lender in the second position is responsible for ensuring that there is sufficient flood insurance to cover both the first lien and the second lien. *See* Loans in Areas Having Special Flood Hazards; Interagency Questions & Answers Regarding Flood Insurance, 74 Fed. Reg. 35914, 35940 (July 21, 2009) ("2009 Interagency Q&A") ("[A] lender cannot comply with the Act and Regulation by requiring the purchase of an NFIP flood insurance policy only in the amount of the outstanding principal balance of the second mortgage without regard to the amount of flood insurance coverage on a first mortgage.").

Following the Court's Preliminary Approval Order, the Court-approved Notice of Settlement ("Class Notice") was mailed to Class Members by the Claims Administrator on June 17, 2016. *Simmons Decl.*, *¶ 9 & Ex. 1*. In response to this Class Notice, ***not a single Class Member (out of more than 20,000) has objected to the Settlement or the terms that were disclosed regarding attorneys' fees, expenses, and service awards***. *Id., ¶ 19*.

## ARGUMENT

### I.   THE REQUESTED ATTORNEYS' FEES AND EXPENSES SHOULD BE AWARDED

Rule 23(h) expressly provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).  Here, Paragraph 38 of the Parties' Settlement Agreement, preliminarily approved by the Court, provides that Class Counsel may petition the Court for an award of up to $650,000 in attorneys' fees and expenses. *See ECF No. 131-1 at ¶ 37*.  Although the amount of the award ultimately rests in the discretion of the Court, the requested amount is clearly reasonable in light of the (1) the total recovery made available to the class; (2) the time invested (and costs expended) by Class Counsel; and (3) other relevant factors.  Moreover, as noted above, no class members have objected to amount of fees and expenses ($650,000) that was spelled out in the Class Notice, or any other aspect of the Settlement.

### A.   The Requested Attorneys' Fees are Reasonable

"When awarding attorneys' fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Gascho v. Global Fitness Holdings*, LLC, 822 F.3d 269, 279 (6th Cir. 2016) (citing *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993)).  In making this assessment, the court may calculate attorneys' fees as a percentage of the total recovery or based a lodestar calculation.

*Dick v. Sprint Communications Co. L.P.*, 297 F.R.D. 283, 298 (W.D. Ky. 2014).  Here, the percentage-of-recovery method and a lodestar cross-check both confirm the reasonableness of the requested fees.

###### 1.     The Requested Fees Are a Modest Percentage of the Total Recovery

The percentage-of-recovery method "is the easiest approach and is consistent with the Manual for Complex Litigation under the facts of the settlement."  *Physicians of Winter Haven LLC v. Steris Corp.*, 2012 WL 406966, at *3 (N.D. Ohio Feb. 6, 2012).[9]  Under this approach, the court calculates the ratio between the requested attorneys' fees and the benefit to the class. *Gascho*, 822 F.3d at 282. When making this calculation, the total benefit to the class "includes the benefit to class members, the attorney's fees [where they are paid separately by defendants], and may include costs of administration [where they are also paid separately by defendants]." *Id.* (internal quotations omitted).  Further, the court should consider the total amount available to the class, not just the amount claimed.  *See Gascho*, 882 F.3d at 282-88 (rejecting objection that consideration of funds made available to the class was improper, finding that the district court did not abuse its discretion in using $15.5 million in funds available to class members as the benefit to the class for purposes of the percentage calculation, and approving $2.8 million in attorneys' fees); *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009) (holding that objectors to fee award were wrong to "focus on the amount *claimed* rather than the amount *allocated*") (emphasis in original); *accord, Dick*, 297 F.R.D. at 299.[10]

---

[9] *See also Gascho* 822 F.3d at 279 ("The advantages of the percentage of the fund method are that: 'it is easy to calculate; it establishes reasonable expectations on the part of plaintiffs' attorneys as to their expected recovery; and it encourages early settlement, which avoids protracted litigation.'") (quoting *Rawlings*, 9 F.3d at 516-17).

[10] *See also Boeing Co. v. Van Gemert*, 44 U.S. 472, 480 (1980) (class members' "right to share the harvest of the suit upon proof of their identity, *whether or not they exercise it,* is a benefit in the fund created by the efforts of class representatives and their counsel.") (emphasis added); *Masters v. Willhelmina Model Agency, Inc*., 473 F.3d 423, 436-37 (2d Cir. 2007) (holding that

Here, of the $650,000 amount requested by Class Counsel, only $564,535.58 represents attorneys' fees, as Class Counsel incurred $85,464.42 in expenses.  The amount available to the Settlement Classes under the settlement is $5,746,138.  *See supra* at 6 & *infra* at 14.  Inclusive of attorneys' fees and costs ($650,000) and settlement administration expenses ($76,730), which Defendants have additionally agreed to pay, the total benefits under the settlement are $6,472,868 ($5,746,138 + $650,000 + $76,730).  Thus, the attorneys' fees represent approximately 8.7% of the total benefits paid under the settlement ($564,535.58 / $6,472,868).

This percentage is far below the 25% benchmark that applies in this circuit.  *See In re Sketchers Toning Shoe Prods. Liability Litig.*, 2012 WL 3312668, at *10 (W.D. Ky. 2012) ("The benchmark for the preliminary approval of awards of attorneys' fees is 25% of the common fund."); *Fournier v. PVS Invs., Inc.*, 997 F. Supp. 2d 828, 832 (E.D. Mich. 1998) ("The 'benchmark' percentage for this standard has been 25%, with the ordinary range for attorney''s fees between 20 – 30%.").[11]   It is also below the percentages that have been approved in other claims-made settlements in this circuit.  *See Dick*, 297 F.R.D. at 299 (approving fee representing 24% of the total funds made available under the settlement); *Physicians of Winter Haven*, 2012 WL 406966, at *8-9 (approving fee equal to 10% of amount available to the class).  Accordingly, the requested fee is clearly reasonable and appropriate under the percentage-of-recovery approach.

### 2.     The Requested Fees Are *Less* than Class Counsel's Lodestar

The requested award is also reasonable when a lodestar cross-check is applied.   To determine the lodestar figure, the court multiplies the hours reasonably expended by the

---

district court erred by calculating the percentage of the fund on the basis of the claims made against the fund, rather than on the entire fund created by the efforts of counsel).

[11] *Accord, In re Polyerethane Foam Antitrust Litig.*, --- F. Supp. 3d ---, 2016 WL 1452005 (N.D. Ohio Apr. 13, 2016) (finding 24% fee award was "centered in the heartland of class-action fee awards").

reasonable hourly rate. *Gascho*, 822 F.3d at 279 (6th Cir. 2016). Where, as here, the case is handled on a contingent fee basis, the court may award Class Counsel a reasonable multiplier of their lodestar to account for the risk that they assumed in taking the case. *Id.* at 279 ("enhancing the lodestar with a separate multiplier can serve as a means to account for the risk an attorney assumes in undertaking a case …") (quoting *Rawlings*, 9 F.3d at 516-17).

In the present case, Class Counsel do not seek a multiplier of their lodestar. To the contrary, the requested amount of fees ($564,535.58, after accounting for $85,464.42.11 in expenses) is *__less__* than Class Counsel's lodestar ($787,576.25). *See Declaration of Kai Richter in Support of Motion for Attorneys' Fees, Expenses, and Service Awards ("Second Richter Decl."), ¶ 13 & Ex. 3.* Accordingly, there is no need for the Court to scrutinize time entries in detail (although Class Counsel is happy to submit them, if the Court wishes to review them). It is clear that Class Counsel is not receiving a windfall.

All reported time was reasonably and necessarily expended on the case. *See Second Richter Decl., ¶ 14.* Among other things, Class Counsel (1) investigated the claims at issue; (2) drafted well-pleaded complaints in two separate actions (the instant *Walls* action and the *Cascio* action), as well as subsequent amended complaints; (3) defeated a motion to dismiss in the *Walls* action; (4) successfully opposed an MDL petition and attended the hearing before the Judicial Panel on Multidistrict Litigation ("JPML") (5) reviewed the discovery and class data produced by Defendants for mediation purposes; (6) retained and worked with a data expert to analyze the class data; (7) prepared a mediation statement, (8) attended a full-day mediation session, (9) engaged in numerous conferences with defense counsel, (10) communicated with the named Plaintiffs throughout the litigation; (11) prepared a comprehensive Settlement Agreement, (12) prepared the exhibits to the Settlement Agreement (including the Notice of Settlement, Claim

Form, and proposed Preliminary Approval Order); (13) drafted a motion for preliminary approval of the Settlement, (14) solicited bids from potential Claims Administrators; (15) worked with the selected Claims Administrator to ensure a smooth notice and claims process following preliminary approval of the Settlement, (16) fielded inquiries from class members; and (17) prepared the present motion. *Id., ¶ 12.* Subsequent to the filing of this Motion, it is also expected that Class Counsel will invest additional time preparing Plaintiffs' Motion for Final Approval, appearing at the Final Approval Hearing, and communicating with Class Members and the Claims Administrator going forward. *Id., ¶ 15.*

Further, the reported rates for attorneys and staff are consistent with the rates charged by national class action counsel. *See Singleton v. Domino's Pizza*, No. 8:11-cv-01823, Dkt. No. 82 at 45 n. 12. (D. Md. Oct. 2, 2013) (Nichols Kaster's rates of between $250 and $550 for attorneys and $175 for professional support staff found to be "within a reasonable range for firms with national class action practices"). Indeed, these rates are particularly justified in light of Class Counsel's specialized experience in class action cases dealing with lender-placed insurance. *See infra* at 20. Accordingly, a lodestar cross check confirms the reasonableness of the requested fees in this case – even without applying a lodestar multiplier.

### 3. Other Relevant Factors Support the Requested Fees

In addition to considering the reasonableness of attorneys' fees under the percentage-of-recovery method and/or lodestar method, the Court also considers six factors, known as the *Ramey* factors. *Dick,* 297 F.R.D. at 298. These factors include: "(1) the value of the benefit to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding the attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and

(6) the professional skill and standing of counsel on both sides." *Id*. (citing *Ramey v. Cincinnati Enquirer, Inc.,* 508 F.2d 1188, 1196 (6th Cir.1974), *cert. denied*, 422 U.S. 1048 (1975).  Here, all of these factors further support the requested attorneys' fees in this case.

### a.    Class Counsel Secured Significant Benefits for the Classes

Courts in the Sixth Circuit regard the first *Ramey* factor, the value of the benefit rendered to the class, as the most important. *See Dick*, F.R.D. at 299 (citing *Basile v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 640 F.Supp. 697, 700 (S.D.Ohio 1986)).  Here, Class Counsel has achieved significant benefits for the class, in the form of both monetary and prospective relief.

### i.    Monetary Relief

As noted above, members of the Commissions Class are eligible to receive a refund equal to 75% of the allegedly unlawful commissions that were paid to Chase's affiliate on LPFI.  *See Settlement, ¶ 24(a).*  This recovery percentage far exceeds the rate of recovery in most class actions.  *See In re Checking Account Overdraft Litig.*, 830 F.R.D. 1330, 1346 (S.D. Fla. 2011) (recovery of 9 percent was reasonable); *Newbridge Networks Sec. Litig.,* 1998 WL 765724, \*2 (D.D.C. Oct. 23, 1998) ("[A]n agreement that secures roughly 6 to 12 percent of a potential recovery ... seems to be within the targeted range of reasonableness"); *In re Rite Aid Corp. Sec. Litig.,* 146 F.Supp.2d 706, 715 (E.D. Pa. 2001) (noting that since 1995, class action settlements have typically "recovered between 5.5% and 6.2% of the class members' estimated losses"); *accord, Johnson v. Brennan*, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.") (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)).

Moreover, members of the Excess Coverage Class who file claims are eligible to receive a flat refund of $325.  *See Settlement, ¶ 24(b).*  This also compares favorably to other settlements

that have received court approval.  For example, in connection with a similar flood insurance settlement involving Bank of America, it is estimated that class members who submitted claims relating to excess coverage received an average gross payment of approximately $104.98.  *First Richter Decl., ¶ 7* (citing *Arnett v. Bank of America, N.A.*, No. 3:11-cv-01372, Dkt No. 270 at ¶ 19 (D. Or. Aug. 26, 2014)).[12]   The average refund in this case is three times higher, and unlike the refund in *Arnett*, is not subject to deduction for attorneys' fees and costs.

Because this monetary relief is cumulative, Eligible Claimants who fall within both the Commissions Class and the Excess Coverage Class will be entitled to both types of Settlement Payments.  *Id at ¶ 24.*  In total, the aggregate amount available to the class is over 5.7 million, broken down as follows:

| Class Membership | # of Class Members | Total Available Amount |
|---|---|---|
| **Commissions Class** | 5,684 | $421,313.13 |
| **Excess Coverage Class** | 14,728 | $4,876,600.00 |
| **Both** | 1,346 | $538,225.18[13] |
| **TOTAL** | 21,758 | $5,746,138.31 |

*Simmons Decl., ¶ 6 n. 2.*  As noted above, the requested fees represent only a small fraction of the overall settlement value, especially in light of the fact that Defendants are separately paying Class Counsel's fees and expenses (and the expenses of the Claims Administrator) so that Class Members will receive the full value of the monetary relief to which they are entitled, without any deductions.

---

[12] The flood insurance settlement that was reached with Bank of America in *Arnett*  received final court approval on September 18, 2014.  *See Arnett v. Bank of America, N.A.*, 2014 WL 4672458, at *6-7 (D. Or. Sept. 18, 2014).

[13] Of this amount, $437,450 (1,346 x $325) is available on their Excess Coverage claims.  The remainder ($100,775.18) is available on their Commissions claims.  *Simmons Decl., ¶ 6 n. 2.*

### ii.        Prospective Relief

The proposed Settlement also provides significant prospective relief to the Settlement Classes.  With respect to Plaintiffs' commissions claims, the Settlement prohibits Chase and CIA (the "Chase Defendants") and their affiliates from accepting commissions or other consideration in connection with lender-placed flood insurance for HELs and HELOCs for a period of five years, and also prohibits ASIC from offering such commissions or other consideration to Chase Defendants and their affiliates.  *See Settlement, ¶ 33.*  With respect to Plaintiffs' excess coverage claims, Chase has agreed that it will not require flood insurance coverage in excess of the minimum amount required by federal law.  *See Settlement, ¶ 34.*  Thus, the business practices at issue in this lawsuit will be prohibited by the Settlement.  This injunctive relief further enhances the overall value of the settlement, and is a relevant consideration in determining the reasonableness of the requested attorneys' fees. *See Staton v. Boeing Co,* 327 F.3d 938, 974 (9th Cir. 2003) (providing that class counsel's having obtained injunctive relief for the class was a relevant circumstance to consider in determining reasonableness of fees).

### b.        Class Counsel Provided Valuable Services to the Class

The second *Ramey* factor also supports the requested fee award.  As noted above, Class Counsel invested a substantial amount of time on behalf of the classes in this case.  On a lodestar basis, the total value of this time is $787,576.25, and is greater than the amount of fees requested. *See supra* at 10-12.

### c.        Class Counsel Undertook the Representation on a Contingent Basis and Faced Substantial Risks

Notably, Class Counsel invested all of this time (and advanced $85,464.42 in expenses) on a contingent basis, without any guarantee of being repaid.  *See Second Richter Decl., ¶ 12.* The contingent nature of the representation and the risks assumed by counsel further supported

the requested fee award here.  *See Dick*, 297 F.R.D. at 300 ("[C]ontingency fee arrangements indicate that there is a certain degree of risk in obtaining a recovery.") (citing *In re Telectronics Pacing Systems*, Inc., 137 F.Supp.2d 1029, 1043 (S.D.Ohio 2001)).  Indeed, the risk of non-recovery in this case was substantial.  As one court recently noted, plaintiffs in lender-placed insurance litigation are beginning to encounter "headwinds" and a "blustery legal atmosphere." *See Montoya v. PNC Bank, N.A.*, 2014 WL 4248208, at *1 (S.D. Fla. Aug. 27, 2014).

   For example, with respect to Plaintiffs' claims regarding the allegedly unlawful commissions that were paid to Chase's affiliate (CIA) in connection with lender-placed flood insurance, certain courts have dismissed these types of claims in other lender-placed insurance cases.  *See Rothstein v. Balboa Ins. Co.*, 794 F.3d 256, 261-66 (2d Cir. 2015); *Cohen v. Am. Sec. Ins. Co.,* 735 F.3d 601, 608 (7th Cir. 2013); *Decambaliza v. QBE Holdings, Inc.*, 2013 WL 5777294, at *5-9 (W.D. Wis. Oct. 25, 2013); *Singleton v. Wells Fargo Bank, N.A.*, 2013 WL 5423917, at *2 (N.D. Miss. Sept. 26, 2013).  The Eleventh Circuit also has expressed skepticism of these types of claims.  *See Feaz v. Wells Fargo Bank, N.A.*, 745 F.3d 1098, 1111 (11th Cir. 2014) ("We agree with the Seventh Circuit that 'simply calling a commission a kickback doesn't make it one.'").  Although various district courts have allowed such claims to proceed past a motion to dismiss,[14] it is uncertain how the Sixth Circuit would rule on the merits of these claims.

   As to Plaintiffs' claims regarding allegedly excessive flood insurance requirements, several courts have dismissed these types of claims as well.  *See Feaz v. Wells Fargo Bank, N.A.*,

---

[14] *See, e.g.*, *Casey v. Citibank, N.A.*, 915 F. Supp. 2d 255, 267 (N.D.N.Y. 2013); *Leghorn v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 1093, 1115 (N.D. Cal. 2013); *Simpkins v Wells Fargo Bank, N.A.*, 2013 WL 4510166, at *7 (S.D. Ill. Aug 26, 2013); *Ellsworth v. U.S. Bank, N.A.*, 908 F. Supp. 2d 1063, 1088 (N.D. Cal. 2012); *McNeary-Calloway v. JP Morgan Chase Bank, N.A.*, 863 F. Supp. 2d 928, 955-61 (N.D. Cal. 2012); *Montanez v. HSBC Mortg. Corp. (USA)*, 876 F. Supp. 2d 504, 513 (E.D. Pa. 2012); *Williams v. Wells Fargo Bank, N.A.*, 2011 WL 4901346, at *2, *4 (S.D. Fla. Oct. 14, 2011).

745 F.3d 1098 (11th Cir. 2014); *Kolbe v. BAC Home Loans Serv., LP*, 738 F.3d 432 (1st Cir. 2013) ("*Kolbe III*") (en banc); *McKenzie v. Wells Fargo Bank, N.A.*, 2012 WL 5372120 (N.D. Cal. Oct. 30, 2012); *Lacroix v. U.S. Bank, N.A.*, 2012 WL 2357602 (D. Minn. June 19, 2012). Moreover, the United States Government took the position, in *amicus* briefs in *Feaz* and *Kolbe*, that lenders may require borrowers to maintain more flood insurance than is required by the U.S. Department of Housing and Urban Development ("HUD") or federal law.  Thus, although certain courts have allowed such excess coverage claims to proceed past motions to dismiss,[15] it is once again uncertain whether Plaintiffs ultimately would have prevailed on such claims in this action.

Further, in addition to these risks on the merits, Plaintiffs would have faced risks on class certification as well.  In a number of lender-placed insurance cases, class certification has been denied.  *See Rapp v. Green Tree Servicing, LLC*, 2014 WL 3846032 (D. Minn. Aug. 5, 2014); *Gooden v. Suntrust Mortg.*, 2013 WL 6499250, at *9 (E.D. Cal. Dec. 11, 2013); *Gustafson v. BAC Home Loans Servicing, LP*, 294 F.R.D. 529 (C.D. Cal. 2013); *Gordon v. Chase Home Fin., LLC*, 2013 WL 436445 (M.D. Fla. Feb. 5, 2013); *Kunzelmann v. Wells Fargo Bank, N.A.*, 2013 WL 139913 (S.D. Fla. Jan. 10, 2013).  In other cases, the classes that have been certified have been limited to single-state classes.  *See Lane v. Wells Fargo Bank, N.A.*, 2013 WL 3187410 (N.D. Cal. June 21, 2013) (certifying class of California borrowers); *Williams v. Wells Fargo Bank, N.A.*, 280 F.R.D. 665 (S.D. Fla. 2012) (certifying class of Florida borrowers).  Thus, even though Class Counsel had success certifying different classes of Chase borrowers in *Hofstetter v. Chase Home Fin., LLC*, 2011 WL 1225900 (N.D. Cal. Mar. 31, 2011), and obtained certification

---

[15] *See e.g.*, *Lass v. Bank of America, N.A.*, 695 F.3d 129 (1st Cir. Sept. 21, 2012); *Casey v. Citibank, N.A.*, 915 F. Supp. 2d 255 (N.D.N.Y. 2013); *Richards v. RBS Citizens, N.A.*, No. 1:12-cv-00239, Dkt. No. 21 (D.R.I. Oct. 10, 2012); *Morris v. Wells Fargo Bank N.A.*, 2012 WL 3929805 (W.D. Pa. Sept. 7, 2012); *Skansgaard v. Bank of Am., N.A.*, 896 F. Supp. 2d 944 (W.D. Wash. 2011); *Wulf v. Bank of Am., N.A.*, 798 F. Supp. 2d 586 (E.D. Pa. 2011).

of certain multi-state classes spanning 40 states in *Ellsworth v. U.S. Bank, N.A.*, 2014 WL 2734953 (N.D. Cal. June 13, 2014), it was not guaranteed that the Court would have certified a nationwide class (or any class) on a contested class certification motion in this case.

The contingent nature of the representation, combined with the risks that counsel faced on the merits and on class certification, would support a substantial multiplier of Class Counsel's lodestar, and underscore the reasonableness of the fee request in this case (as Class Counsel are not seeking a multiplier, and are actually requesting less than their lodestar).

> **d.    Awarding the Requested Fees Will Maintain an Incentive to Others to Pursue Socially Useful Class Litigation**

The fourth *Ramey* factor (society's stake in rewarding counsel to maintain an incentive to others to pursue socially useful litigation) further supports the requested fee award.  There is no doubt that class action cases such as this benefit society by providing large groups of people a means to vindicate their legal rights where they often would not be able to do so by themselves. *See In re Cardizem CD Antitrust Litigation,* 218 F.R.D. 508, 534 (E.D. Mich. 2003) ("Encouraging qualified counsel to bring inherently difficult and risky but beneficial class actions ... benefits society").   "'Thus, attorneys who take on class action matters enabling litigants to pool their claims provide a huge service to the judicial process' and should be rewarded for such efforts."  *Dick*, 297 F.R.P. at 301 (citing *In re Rio Hair Naturalizer*, 1996 WL 780512, at *17 (E.D. Mich. Dec. 20, 1996)).  Here, Class Counsel are not seeking an outsized fee award or even the full value of their lodestar.   The modest amount requested is the bare minimum required to prosecute claims such as this, and pales in comparison to the very large fee awards that have been approved in other lender-placed insurance cases.  *See, e.g., Saccoccio v. JPMorgan Chase Bank, N.A.*, 297 F.R.D. 683, 695 (S.D. Fla. 2014) (approving **$20 million** fee

award to class counsel in class action suit against Chase and ASIC involving lender-placed hazard insurance).

### e.      Lender-Placed Insurance Litigation Is Complex

The fifth *Ramey* factor (the complexity of the litigation) also supports the requested fee. As other courts have noted, lender-placed insurance actions are "highly complex." *See Saccoccio*, 297 F.R.D. at 692.  They involve several disputed legal issues, complicated insurance issues requiring expert testimony, voluminous borrower data, and hotly-disputed fact issues requiring the development of an extensive factual record.  The fact that several lender-placed insurance cases recently have gone up on appeal, and *amicus* briefs have been filed in certain of those appeals, reflects the difficulty and uncertainty of the issues involved.  *See supra* at 16-17 & n. 15 (citing *Rothstein, Cohen*, *Feaz*, *Kolbe*, and *Lass*, and amicus briefs filed by the Department of Justice in *Feaz* and *Kolbe*).

The *Kolbe* case, which also involved claims relating to allegedly excessive flood insurance requirements and lender-placed flood insurance, is a perfect example.  In that case: (1) the district court dismissed the plaintiff's excess coverage claims, *see Kolbe v. BAC Home Loans Servicing, L.P.*, 2011 WL 3665394 (D. Mass. Aug. 18, 2011) ("*Kolbe I*"); (2) the First Circuit later reversed the district court in a 2-1 panel opinion, *see Kolbe v. BAC Home Loans Servicing, L.P.*, 695 F.3d 111 (1st Cir. 2012) ("*Kolbe II*"); and (3) the First Circuit then vacated the panel decision, took up the matter *en banc*, and split three-to-three, resulting in an affirmance of the district court decision by default.  *See Kolbe III*, 738 F.3d at 436.  Thus, this is hardly "garden variety" litigation.

### f.      Class Counsel Is Highly Skilled and Experienced in Lender-Placed Insurance Litigation

The final *Ramey* factor (the professional skill and standing of counsel on both sides) also weighs heavily in favor of approving the requested fee.  The Nichols Kaster firm has been at the forefront of lender-placed insurance litigation for a half dozen years. *Second Richter Decl., ¶ 7.* Nichols  Kaster was appointed class counsel in *Hofstetter v. Chase Home Fin., LLC*, 2011 WL 1225900 (N.D. Cal. Mar. 31, 2011) and *Ellsworth v. U.S. Bank, N.A.*, 2014 WL 2734953 (N.D. Cal. June 13, 2014), and has been appointed class counsel or interim class counsel for settlement purposes in numerous other cases involving lender-placed insurance.  *Id., ¶¶ 21-23.*  Nichols Kaster also successfully argued before the First Circuit Court of Appeals in *Lass v. Bank of America, N.A.*, 695 F.3d 129 (1st Cir. 2012), and has successful argued dispositive motions in numerous other lender-placed insurance cases as well.  *Id.*  The other co-lead counsel, Beasley Allen, is a respected class action law firm that also has experience litigating lender-placed insurance cases.  *Second Richter Decl., ¶ 9; First Richter Decl., Ex. 2.*  In addition, Meyer Wilson and Walker Law also have considerable class action experience.  *See First Richter Decl., Exs. 3-4.*

As the Court found in its Preliminary Approval Order, the lawyers involved are "capable counsel" (*see ECF No. 127 at 4*) who worked together, consolidated their related actions, and ultimately achieved an excellent result for the class members involved.  At the outset of the case, counsel defeated a motion to dismiss, and continued to litigate the action for more than four years against one of the nation's largest banks represented by one of the nation's largest law firms, Arnold & Porter, LLP.  Thus, the qualifications and experience of counsel, the formidable nature of the opposition, and the successful and skillful manner in which the case was litigated all supported the requested fee in this case.

**g.      The Requested Fee Award Is *Inclusive* of Costs**

In evaluating the requested amount, it is also important to keep in mind that it is inclusive

of both fees ***and*** expenses. Class Counsel have advanced $85,464.42 in expenses prosecuting this

action (exclusive of fees paid to local counsel),[16] and none of these expenses have been

reimbursed to date. *See Second Richter Decl., ¶¶ 16-18.* These expenses are summarized by

category as follows:

| Category | Nichols Kaster Expenses | Beasley Allen Expenses | Meyer Wilson Costs Expenses | Walker Law Expenses | Class Counsel Total Expenses |
|---|---|---|---|---|---|
| Filing Fees | $530.04 | $400.00 | $350.00 | $230.00 | $1,510.04 |
| PACER | $129.53 | $20.30 | $282.30 | $103.00 | $535.13 |
| Photocopies | $54.11 | $59.86 | $41.90 | $413.50 | $569.37 |
| Postage & Shipping | $97.55 | $46.00 | $55.87 | $63.90 | $263.32 |
| Courier/ Service of Process | $165.00 | $87.18 | | | $252.18 |
| Telephone | $180.18 | $23.20 | $175.51 | $91.28 | $470.17 |
| Travel | $7,937.21 | $10,894.21 | $2,037.56 | $5,993.10 | $26,862.08 |
| Westlaw | $3,625.02 | $125.71 | | | $3,750.73 |
| Mediation Fees | $5,354.49 | $5,354.49 | | | $10,708.98 |
| Expert Fees | $37,243.26 | | | | $37,243.26 |
| Misc. | $3,179.00 | $120.16 | | | $3,299.16 |
| **TOTAL** | **$58,495.39** | **$17,131.11** | **$2,943.14** | **$6,894.78** | **$85,464.42** |

*Id., ¶ 18.*

These types of expenses are standard expenses in class action litigation, *see* H. Newberg,

ATTORNEY FEE AWARDS § 2.19 at 69 (1986), and are subject to reimbursement. *See Dick*,

297 F.R.D at 298 ("[C]lass counsel is entitled to reimbursement of all reasonable out-of-pocket

litigation expenses and costs in the prosecution of claims and in obtaining settlement, including

expenses incurred in connection with document productions, consulting with experts and

consultants, travel, and other litigation-related expenses.") (quoting *In re Cardizem CD Antitrust*

---

[16] If fees paid to local counsel are included ($11,423.75), the total is $96,888.17.

*Litigation,* 218 F.R.D. at 535). This further underscores the reasonableness of the requested amount, as Class Counsel will net only $600,000 after their expenses are repaid (and probably less, since further expenses inevitably will be incurred in connection with attending the final approval hearing).

### h.      No Class Members Have Objected to the Requested Fees

Finally, it is also noteworthy that no class members have objected to the requested fees and expenses (or any other term of the Settlement).  The Notice of Settlement that was mailed to Settlement Class Members specifically stated:

> Defendants have agreed to pay the fees and expenses of the attorneys for the Settlement Classes, Nichols Kaster, PLLP, Beasley, Allen, Crow, Methvin, Portis & Miles, P.C., C.W. Walker, III, LLC; and Meyer Wilson Co., LPA ("Class Counsel"), in an amount to be approved by the Court up to $650,000.

*Simmons Decl., Ex. 1 at 4.*  The fact class members were advised of the compensation that would be paid to Class Counsel under the Settlement and did not object further demonstrates that the requested amount is reasonable and appropriate. *See In re Cardizem CD Antitrust Litigation*, 218 F.R.D. 508, 534 (E.D. Mich 2003) (explaining that the lack of objections was remarkable and lent support to the reasonableness of the fees where class members were explicitly notified that $16 million of the settlement, or 17%, would be apportioned to attorneys' fees).

## II.      THE REQUESTED SETTLEMENT ADMINISTRATION EXPENSES SHOULD BE APPROVED

As part of the Settlement, Defendants also have agreed to pay the fees and costs of the Claims Administrator up to $100,000. *Settlement, ¶ 40.*  As of the date of this motion, the total amount of actual and anticipated settlement administration expenses is $76,730.  *Simmons Decl., ¶ 20.*  This amount includes all charges associated with the duties specified in the Settlement Agreement, including (among other things): (1) preparing and mailing the Notice of Settlement, (2) searching for valid addresses for any Settlement Class Members whose Notices were returned

as undeliverable; (3) establishing an automated telephone support line for Class Members, (4) creating and maintaining the settlement website; (5) reviewing and processing claims;   (6) processing opt-outs and objections (although there have been no objections to the Settlement thus far); and  (7) communicating  with  the  Parties  regarding  the  status  of  settlement administration;  and (8) mailing settlement payments to Class Members with valid and timely claims upon approval of the Settlement. *Second Richter Decl., ¶¶ 23-24.*

The Claims Administrator in this action is Analytics LLC ("Analytics").  Analytics was chosen after a competitive bidding process in which Analytics submitted the lowest bid out of three candidates.  *Second Richter Decl., ¶ 23.*  Analytics has experience handling other lender-placed insurance settlements, including other lender-placed insurance settlements involving Chase.  *Id., ¶ 22.*  As of the date of this motion, it has performed all duties required by the Settlement.  *Id., ¶ 24.*  Accordingly, the requested settlement administration expenses are reasonable, and should be approved.

## III.    THE REQUESTED SERVICE AWARDS SHOULD BE APPROVED

Finally, in addition to approving the requested attorneys' fees and expenses, and the expenses of the Claims Administrator, this Court also should approve class representative service awards to the named Plaintiffs, as provided by Paragraph 39 of the Settlement Agreement.  "The Sixth Circuit has held that incentive awards to class representatives may be appropriate in some cases, but has not defined the circumstances justifying incentive awards."  *Dick*, 297 F.R.D at 301 (citations omitted).  Among other things, district courts in the Sixth Circuit have considered: (1) the action taken by the Class Representatives to protect the interests of Class Members and others, and whether these actions resulted in a substantial benefit to Class members; (2) whether the Class Representatives assumed substantial direct and indirect financial risk; and (3) the

amount of time and effort spent by the Class Representatives in pursuing the litigation. *Id.* (citing *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D.Ohio 1991)).

Here, the named Class Representatives brought this action to protect not only their own interests, but the interests of their fellow class members, and have achieved substantial benefits for the Settlement Classes.  In bringing the litigation, the Class Representatives took a risk that the lawsuit might be unsuccessful, and that Chase might personally seek costs against them in the event that the action failed.  Further, the Class Representatives have actively participated in the litigation by (1) communicating with counsel throughout the litigation and settlement negotiations; (2) providing counsel with documents and information relating to their claims; (3) reviewing pleadings and other documents relating to the case; and (4) reviewing the Settlement Agreement and a draft of the motion for preliminary settlement approval.  *See Second Richter Decl., ¶ 26*; *Walls Decl. (ECF No. 108), ¶ 20*; *Brown Decl. (ECF No. 109), ¶ 19*; *Williams Decl. (ECF No. 110), ¶ 24*; *Cascio Decl. (ECF No. 111), ¶ 13*; *Nathanson Decl. (ECF No. 112), ¶ 14.*

In light of these contributions, the risks they assumed, and the results they obtained, the Settlement Agreement provides for service awards of $5,000 per household to the named Class Representatives.  *See Settlement (ECF No. 113-1), ¶ 39.*  These service awards represent less than 0.1% of the funds they helped make available to the class, and are consistent with the service awards approved in other lender-placed insurance cases involving Chase and ASIC.  *See, e.g., Clements v. JPMorgan Chase Bank, N.A.*, 2014 WL 2804003 (N.D. Cal. May 16, 2014) (approving $5,000 service award for each class representative in lender-placed flood insurance case against Chase involving mortgage loan borrowers); *Saccoccio v. JPMorgan Chase Bank, N.A.*, 297 F.R.D. 683 (S.D. Fla. 2014) (approving $5,000 service award to lead plaintiff in

lender-placed hazard insurance case against Chase).  Further, it is important to note that "that no objections were made to the request for incentive awards" and "the incentive awards do not diminish the class recovery" because "the Settling Defendants have agreed to pay these awards." *Dick*, 297 F.R.D at 301 (citing these factors in approving service awards).  Accordingly, Plaintiffs respectfully request that the Court approve the requested service awards.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court approve their request for (1) attorneys' fees and expenses to Class Counsel in the amount of $650,000; (2) settlement administration expenses to Analytics LLC in the amount of $76,730; and (3) service awards to the named Plaintiffs in the amount of $5,000 per household, all of which will be paid by Defendants under the Settlement Agreement and will not reduce the recovery to the Settlement Classes.

Respectfully submitted,

Dated:  August 2, 2016

s/Kai Richter_____
Kai Richter*
   *admitted *pro hac vice*
NICHOLS KASTER, PLLP
4600 IDS Center, 80 South 8th Street
Minneapolis, Minnesota 55402
Telephone: (612) 256-3200
Fax: (612) 215-6870
Email: krichter@nka.com

Archie I. Grubb, II*
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
218 Commerce Street
P.O. Box 4160
Montgomery, Alabama 36103-4160
Telephone:  (334) 269-2343
Facsimile:  (334) 954-7555
Email: archie.grubb@beasleyallen.com

Clinton W. Walker, III*
C.W. WALKER, III, LLC
512 Main Street
Greenville, MS 38702
Telephone:  (662) 378-2121
Facsimile:  (662) 378-2183
Email: bwalker@bill-walker.com

Matthew R. Wilson*
MEYER WILSON CO., LPA
1320 Dublin Road, Suite 100
Columbus, OH 43215
Telephone: (614) 224-6000
Facsimile:  (614) 224-6066
Email: mwilson@meyerwilson.com

Barbara D. Bonar, KY Bar #42213
B. DAHLENBURG BONAR, PSC
3611 Decoursey Ave
Covington, KY 41015
Telephone: (859) 431-3333
Fax: (859) 392-3900
Email: bdbonar@lawatbdb.com

**ATTORNEYS FOR PLAINTIFFS AND THE
SETTLEMENT CLASS**