UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

JEROME WALLS, et al.,                                                                 Plaintiffs,

v.                                                                    Civil Action No. 3:11-cv-673-DJH

JPMORGAN CHASE BANK, N.A., et al.,                                        Defendants.

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Plaintiffs allege that Chase Bank and its affiliates improperly required borrowers with home equity lines of credit to purchase excessive amounts of flood insurance and improperly charged borrowers for lender-placed flood insurance. (Docket No. 107-1, PageID # 1539)  In May 2016, a settlement between the parties was preliminarily approved. (D.N. 125)  Plaintiffs now seek final approval of the settlement agreement (D.N. 132) and an award of attorney fees and expenses, settlement administration expenses, and class representative awards. (D.N. 128)  Because the Court concludes, after a hearing (D.N. 135), that the settlement is fair, reasonable, and adequate, the motion for final approval will be granted.  The motion for attorney fees and other expenses will also be granted because the requested fees and expenses are reasonable.

I.     BACKGROUND

This case began in December 2011 when Plaintiff Jerome Walls brought suit alleging that borrowers with home equity lines of credit (HELOCs) acquired by Chase Bank through Bank One, N.A. were "improperly required to purchase excessive amounts of flood insurance and/or were improperly charged for [lender-placed flood insurance (LPFI)]." (D.N. 107-1, PageID # 1539)  After the Court denied Chase's motion to dismiss, Walls amended his complaint and added three other named plaintiffs, added a defendant, and expanded the scope of the putative

1

action to include "borrowers with HELs acquired by Chase from Bank One." (*Id.*) Later, still more plaintiffs and claims were added. (*Id.*, PageID # 1539-40)

The parties began settlement negotiations in August 2012. (*Id.*, PageID # 1540; D.N. 35) Morton Denlow, a retired United States Magistrate Judge from the Northern District of Illinois, served as a mediator between the parties. (*Id.*, PageID # 1541)

Defendants provided class data to the plaintiffs, who in turn retained an experienced damages expert to evaluate the data. (*Id.*) The parties conducted an arm's-length mediation session with Judge Denlow in January 2014. After supplemental data and discussions, the parties reached a settlement-in-principle in February 2015. (*Id.*, PageID # 1541-42)

The settlement establishes two nationwide classes: the Excess Coverage Class and the Commissions Class. The Excess Coverage class comprises all persons who have or had a HEL serviced by Chase or a HELOC serviced by Chase that was acquired by Chase through Bank One, and who were sent an initial flood insurance "cycle letter" by Chase at any time from December 23, 2009, to November 13, 2011, inclusive, excluding any persons with HELOCs secured by property in California. (*Id.*) The Commissions Class includes people who met one of two criteria. (*Id.*) The first: all persons who either have or had a HEL serviced by Chase and were charged for lender-placed flood insurance that was effective at any time from June 11, 2008, to December 31, 2009. (*Id.*) The second: all persons who have or had a HELOC serviced by Chase that was acquired by Chase through Bank One, and were charged for lender-placed flood insurance that was effective at any time from December 7, 2007, to December 31, 2009, excluding any persons with HELOCs secured by property in California. (*Id.*)

Members of the classes will have the opportunity to submit a one-page claim form seeking monetary relief. (*Id.*, PageID # 1543) Eligible members of the Commissions Class will

2

receive a payment equal to 75 percent of commissions received by any Chase affiliate for LPFI premiums charged to the claimant's HEL or HELOC account during the time period listed above. (*Id.*) Alternatively, the Excess Coverage Class members will receive $325 under the proposed settlement. (*Id.*) Relief is cumulative; any person who qualifies for membership in both classes may receive both forms of monetary relief. (*Id.*) Qualifying claimants will receive their payments either by check or escrow credit, depending upon whether or not the claimant attests that they paid any portion of the applicable insurance. (*Id.*, PageID # 1543-44) Any defective claims may be cured and new claims accepted as timely filed so long as the defects are resolved within sixty days of the end of the claims period. (*Id.*, PageID # 1544)

The settlement also provides prospective relief: the defendants and their affiliates will not accept any commissions or compensation in connection with LPFI coverages for residential property securing a HEL or HELOC for five years. (*Id.*) Additionally, for five years Chase shall not demand flood insurance coverage in excess of the minimum flood insurance coverage amount for one-to-four family residential properties. (*Id*, PageID # 1544-45) Because many potential class members have active accounts and long-term mortgages, "the [p]arties agree that the value of this prospective relief is substantial." (*Id.*, PageID # 1545) In exchange for this monetary and prospective relief, class members who do not timely opt out of the settlement would release their claims against the defendants. (*Id.*)

The defendants have agreed to bear the costs of settlement administration, up to $100,000, which will preserve more funds for the class members than if the administrative fees were deducted from the refunds. (*Id.*, PageID # 1548) Likewise, the defendants will pay Class Counsel's attorneys' fees and expenses, up to $650,000. (*Id.*) The named plaintiffs will receive

$5,000 each as service awards. (*Id*.) Neither expenditure will be deducted from the refunds. (*Id*.)

Following preliminary approval on May 24, 2016, (D.N. 127) the Claims Administrator, Analytics, LLC, provided notice of the settlement to Class Members pursuant to the settlement agreement. (*Id*., PageID # 1546-48) First, on June 17, 2016, Analytics mailed the Class Notice and the required settlement information (e.g., summary of the lawsuit, definition of the Commissions Class and Excess Cover Class, explanation of opt-out rights) to Settlement Class Members. (D.N. 132-1, PageID # 2233) On June 20, 2016, notice of the Settlement was published in USA Today. (*Id*., PageID # 2234) Analytics also created a website and telephone support line that provided Settlement Class Members with additional information about the settlement. (*Id*., PageID # 2234-35) Notably, out of 21,758 Settlement Class Members, only seven chose to opt out of the settlement agreement, and none objected to the settlement. (*Id*., PageID # 2235)

## II. DISCUSSION

### a. Settlement Approval

Pursuant to Federal Rule of Civil Procedure 23(e), "a court may only approve class-action settlements that are 'fair, reasonable, and adequate.'" *In re Skechers Toning Shoe Prods. Liab. Litig.*, No. 3:11-MD-2308-TBR, 2013 WL 2010702, at *2 (W.D. Ky. May 13, 2013) (*Skechers II*). The Sixth Circuit has instructed courts to consider the following seven factors in making this determination:

> (1) the risk of fraud or collusion;
>
> (2) the complexity, expense and likely duration of the litigation;
>
> (3) the amount of discovery engaged in by the parties;

4

(4) the likelihood of success on the merits;

(5) the opinions of Class Counsel and class representatives;

(6) the reaction of absent class members; and

(7) the public interest.

*Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) (*UAW*) (citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992)). "No one of these factors is dispositive. Rather, all are to be weighed and considered in light of the particular demands of the case." *Skechers II*, 2013 WL 2010702, at *2 (citing *Grenada Invs., Inc.*, 962 F.2d at 1205–06)). Additionally, "federal policy favors class action settlement." *Id.* (citing *UAW*, 497 F.3d at 632)

### i. Risk of Fraud or Collusion

"Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Skechers II*, 2013 WL 2010702, at *4 (internal quotation marks omitted) (quoting *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 531 (E.D. Ky. 2010)). "When a settlement is the result of extensive negotiations by experienced counsel, the Court should presume it is fair." *In re Skechers Toning Shoe Prods. Liab. Litig.*, 2012 WL 3312668, at *9 (W.D. Ky. Aug. 13, 2012) (*Skechers I*) (internal quotation marks omitted). In this case, neither party has alleged that the settlement is the result of fraud or collusion, nor is there any evidence in the record of such behavior. Additionally, as addressed in the Court's preliminary approval order, the Parties engaged in arm's-length negotiations, and "the settlement was reached through negotiations between capable counsel and mediated by a former federal magistrate judge." (D.N. 125, PageID # 2015) Thus, because no party has alleged fraud or

collusion and the parties conducted arm's-length negotiations, this factor supports approval of the settlement.

### ii. Complexity, Expense, and Likely Duration of the Litigation

"In evaluating a proposed class settlement, the Court must also weigh the risks, expense and delay the plaintiffs would face if they continued to prosecute the litigation through trial and appeal." *Skechers II*, 2013 WL 2010702, at *5 (quoting *Thacker*, 695 F. Supp. 2d at 531). "The Court weighs these factors against the recovery provided by the settlement." *Id*. (citing *In re Cardizem CD Antitrust Litig.,* 218 F.R.D. 508, 523 (E.D. Mich. 2003)).

Here, Plaintiffs claim that Chase Bank defrauded them by improperly requiring the purchase of excessive flood insurance and charging for lender-placed flood insurance. They note that "to prosecute the claims to a final judgment, Plaintiffs would have had to take numerous depositions, appear for their own depositions, retain costly experts, engage in class certification motion practice, engage in summary judgment motion practice, prepare for trial, and present evidence during a jury trial." (D.N. 132-1, PageID # 2240) Additionally, there is a high likelihood of appeal, which could delay the case for several years. (*Id.*, PageID # 2240-41 (citing *Ellsworth v. U.S. Bank, N.A.*, No. 3:12-cv-02506 (N.D. Cal.), as an example of the lengthy delays and appeals that could be expected in this case)) In light of the significant anticipated costs and delays, this factor favors approval of the settlement.

### iii. Amount of Discovery Engaged in by the Parties

In the course of settlement negotiations, the parties have engaged in thorough discovery. Defendants have produced "an extensive set of Class Data to Class Counsel," which included "information related to relevant customers with HELs and HELOCs" (e.g., "the available credit associated with each HELOC and the outstanding principal balance associated with each

HEL; . . . the dates that initial cycle letters were sent on Chase's behalf demanding flood insurance or additional flood insurance coverage; [and] . . . the amount of any flood insurance purchased by the customer after receiving a cycle letter"). (D.N. 132-1, PageID # 2241-42) Meanwhile, Class Counsel had "access to voluminous discovery" from a previous class action suit against Chase, which contained "Chase's policies and procedures relating to flood insurance; relevant contracts between the Chase Defendants and [American Security Insurance Company] relating to flood insurance, LPFI, and the commissions that were paid to Chase's affiliates on LPFI; and deposition testimony from several witnesses." (*Id.*, PageID # 2242) The extensive pre-settlement discovery in this case favors approval of the settlement.

### iv. Likelihood of Success on the Merits

The Court must "weigh[] the plaintiff[s'] likelihood of success on the merits against the amount and form of the relief offered in the settlement." *Skechers II*, 2013 WL 2010702, at *6 (quoting *UAW*, 497 F.3d at 631). In this case, Plaintiffs face several risks with continuing litigation. First, Plaintiffs would have to face class certification. While prior cases suggest that Plaintiffs would be successful, *see e.g., Hofstetter v. Chase Home Finance, LLC*, No. 10-01313, 2011 WL 1225900 (N.D. Cal. Mar. 31, 2011), certification is not guaranteed. (*See* D.N. 132-1, PageID # 2244-45 (citing five lender-placed insurance cases in which class certification was denied)) Second, Plaintiffs would have to prove the elements of their claims. As Plaintiffs acknowledge in their motion for settlement approval, several of their claims, specifically those alleging excessive flood insurance requirements and unlawful commissions paid to Chase's affiliate in connection with LPFI, could be difficult to prove and have been dismissed by a number of courts. (*Id.*, PageID # 2243-44 (citing *Rothstein v. Balboa Ins. Co.*, 794 F.3d 256, 261-66 (2d Cir. 2015); *Feaz v. Wells Fargo Bank, N.A.*, 745 F.3d 1098 (11th Cir. 2014); *Cohen*

7

*v. Am. Sec. Ins. Co.,* 735 F.3d 601, 608 (7th Cir. 2013); *Kolbe v. BAC Home Loans Serv., LP*, 738 F.3d 432 (1st Cir. 2013) (en banc))).

These risks are weighed against the monetary and prospective relief provided for in the settlement, as described earlier. For example, the settlement provides claimants with financial awards and prevents Chase from engaging in similar tactics in the future. According to Plaintiffs, the settlement provides relief to the "broadest possible set of class members." (*Id.*, PageID # 2245) Thus, in considering the likelihood of success on the merits against the broad relief offered by the settlement, this factor weighs in favor of settlement.

### v. Opinions of Class Counsel and Class Representatives

"In deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference." *Skechers II*, 2013 WL 2010702, at *6 (quoting *Thacker*, 695 F. Supp. 2d at 532). In this case, both Plaintiffs and Class Counsel have submitted declarations that they believe the settlement is fair and reasonable and "in the best interests of the Class." (D.N. 133-1, PageID # 2269-70; *see* D.N. 108, ¶ 14; D.N. 109, ¶ 13; D.N. 110, ¶ 18; D.N. 111, ¶ 7; D.N. 112, ¶ 8) Because the settlement is supported by Plaintiffs and Class Counsel, this factor weighs in favor of approval.

### vi. Reaction of Absent Class Members

"A certain number of . . . objections [and opt-outs] are to be expected in a class action . . . . If only a small number are received, the fact can be viewed as indicative of the adequacy of the settlement." *Skechers II*, 2013 WL 2010702, at *7 (quoting *In re Cardizem,* 218 F.R.D. at 527). As noted earlier, out of over 20,000 Class Members, none submitted a written objection to the proposed settlement, and only seven have elected to opt out of the settlement. (D.N. 132-1,

PageID # 2247) The fact that no objections were received and only a handful of class members elected to opt out weighs in favor of granting approval of the settlement.

### vii. Public Interest

"There is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *Skechers II*, 2013 WL 2010702, at *7 (quoting *In re Cardizem,* 218 F.R.D. at 530). In this case, as addressed in the preliminary approval order and acknowledged in Plaintiffs' motion for final settlement approval,

> resolving these issues as part of a class action is preferable to having individual plaintiffs go it alone against one of the nation's largest banks. Indeed, it is unlikely that Class Members even could bring their claims on an individual basis because the dollar value of each of their claims, standing alone, is relatively small.

(D.N. 125, PageID # 2018 (quoting D.N. 107-1, PageID # 1565 (citation omitted))) Because settlement will serve the public interest by resolving Plaintiffs' claims and preserving judicial resources, this final factor favors approval of the settlement.

In conclusion, all seven factors weigh in favor of granting approval of the settlement in this case. Thus, the Court finds that the proposed settlement is fair, reasonable, and adequate. As such, it satisfies Federal Rule of Civil Procedure 23(e)(2).

### b. Attorney Fees, Costs, Expenses, and Class Representative Awards

In addition to their motion for settlement approval, Plaintiffs also request approval of attorney fees and expenses, settlement administration expenses, and class representative awards. (D.N. 128) Rule 23 provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). In this case, Plaintiffs and Class Counsel seek: "(1) attorneys' fees and expenses to Class Counsel in the amount of $650,000; (2) service awards to the named Plaintiffs

in the amount of $5,000 per household; and (3) reimbursement of settlement administration expenses to the designated claims administrator, Analytics, LLC, in the amount of $76,730." (D.N. 128, PageID # 2050-51) The Court concludes that these amounts are reasonable under the circumstances of the case.

### i. Fees

In determining whether a fee request is proper, the Court may employ either the percentage-of-the-fund method or the lodestar method. *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 278-80 (6th Cir. 2016). Here, the plaintiffs suggest that the Court apply a percentage, then use the lodestar method as a cross-check. (*See* D.N. 128-1, PageID # 2069-72) The Sixth Circuit has approved this approach. *See Bowling v. Pfizer*, 102 F.3d 777, 780 (6th Cir. 1996).

### a. Percentage of Fund

The Sixth Circuit has permitted fee awards ranging from 10 to 50 percent. *See id.* (affirming fee award of 10 percent); *Clevenger v. Dillards, Inc.*, No. C-1-02-558, 2007 U.S. Dist. LEXIS 174, at *10-11 (S.D. Ohio Mar. 9, 2007) (finding 29 percent fee to be "modest and . . . below what is often awarded by district courts in th[e Sixth] Circuit" and citing various cases in support of that conclusion). The fees requested in this case amount to approximately 8.7 percent of the gross settlement fund, well below the typical range. (D.N. 128-1, PageID # 2070)

Among the factors to be considered in determining the reasonableness of a proposed fee award are

> (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.

10

*Gascho*, 822 F.3d at 280 (quoting *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009)). In this case, members of the Commission Class can receive a refund equal to 75% of the commissions that were paid to Chase's affiliate on LPFI. (D.N. 128-1, PageID # 2073) Members of the Excess Coverage Class are entitled to a flat refund of $325. (*Id.*) In addition, the settlement bars Chase and its affiliates from (1) accepting any commissions or compensation in connection with LPFI coverage for residential property securing a HEL or HELOC and (2) from demanding flood insurance coverage in excess of the minimum flood insurance coverage amount for one-to-four-family residential properties for five years. (D.N. 107-1, PageID # 1544)

Citing a number of cases with recovery percentages in the single digits, Plaintiffs assert that the recovery percentage "far exceeds the rate of recovery in most class actions." (D.N. 128-1, PageID # 2073) At a hearing on the motions held on September 19, 2016, counsel for both parties asserted that the relief is particularly favorable to the plaintiffs because it was negotiated before more recent developments in the law that have benefited the defendants.

Class Counsel worked on a contingent fee basis and advanced $85,464.42 in costs. (D.N. 128-1, PageID # 2070) Hourly rates range from $220 to $700, commensurate with market rates and the attorneys' skill and experience. (*See* D.N. 129-2, PageID # 2187-89) Nichols Kaster, PLLP, which had the highest total fees of the four firms that worked together as Class Counsel, had experience as Class Counsel in several other recent lender-placed insurance litigation cases, including *Hofstetter*, 2011 WL 1225900, and *Ellsworth*, 2014 WL 2734953. (D.N. 128-1, PageID # 2080) In sum, the factors indicate that the requested fee is reasonable.

### b. Lodestar Cross-Check

A lodestar cross-check, while unnecessary, also supports Class Counsel's fee request. Under the lodestar method of calculation, the Court "multiplies the number of hours reasonably

11

expended on the litigation by a reasonable hourly rate." *Gascho*, 822 F.3d at 279 (internal quotation marks omitted) (citing *Bldg. Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1401 (6th Cir. 1995)). The Court then has the discretion to "enhance[e] the lodestar with a separate multiplier [that] can serve as a means to account for the risk an attorney assumes in undertaking a case, the quality of the attorney's work product, and the public benefit achieved." *Id*. Based on the declarations of Class Counsel, the total fee amount thus far is $787,576.25. (*See* D.N. 129-2, PageID # 2187-89) Dividing the amount they seek ($650,000) by this amount results in a multiplier of 0.83, which is a negative multiplier, meaning that the requested fees are less than the lodestar amount. *See Dick v. Sprint Commc'ns Co. L.P.*, 297 F.R.D. 283, 300 (W.D. Ky. 2014). Thus, the lodestar cross-check result indicates that the fee award sought by Class Counsel is reasonable.

### ii. Class Representative Awards

"The Sixth Circuit has held that incentive awards to class representatives may be appropriate in some cases, but has not defined circumstances justifying incentive awards." *Skechers II*, 2013 WL 2010702, at *14 (quoting *Lonardo v. Travelers Indem. Co.*, No. 1:06–CV–962, 2010 WL 1416698, at *18 (N.D. Ohio Mar. 31, 2010)). To determine whether to approve class representative awards, district courts in the Sixth Circuit have looked to the following factors:

> (1) the action taken by the Class Representatives to protect the interests of Class Members and others and whether these actions resulted in a substantial benefit to Class Members; (2) whether the Class Representatives assumed substantial direct and indirect financial risk; and (3) the amount of time and effort spent by the Class Representatives in pursuing the litigation.

*Id*. (citing *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991)). In this case, the named plaintiffs could receive service awards of up to $5,000

each. (D.N. 107-1, PageID # 1548) At the September 19, 2016, hearing on the motions, Plaintiffs' attorney, Kai Richter, a partner at Nichols Kaster, PLLP, stated that in other Chase settlements, the named plaintiffs received $5,000. Richter also submitted a declaration that

> throughout the course of this action, the named Plaintiffs have been mindful of their responsibilities as Class Representatives, and have done everything asked of them. Among other things, Plaintiffs (1) communicated with counsel throughout the litigation and settlement negotiations; (2) provided counsel with documents and information relating to their claims; (3) reviewed pleadings and other documents relating to the case; and (4) reviewed the Settlement Agreement and a draft of the motion for preliminary settlement approval.

(D.N. 129) Richter added that they also risked being liable for the cost of the suit.

There are no objections to the request for class representative awards. Additionally, as in *Skechers II*, the class representative awards "do not diminish class recovery and [are] relatively small awards." 2013 WL 2010702, at *14. Finally, Defendants have already agreed to pay these awards. (D.N. 107-1, PageID # 1548) Thus, the Court finds the awards appropriate.

### iii. Settlement Administration Expenses

In this case, the defendants have agreed to bear the costs of settlement administration, up to $100,000. (D.N. 107-1, PageID # 1548) Analytics, LLC estimates that its total costs of administering the settlement will be $76,730, which is under the agreed $100,000 cap. (D.N. 130, PageID # 2195) Because the defendants have agreed to pay the settlement administration expenses separately and these fees are below the agreed amount, they will not diminish class recovery. Thus, the Court finds the expenses reasonable.

### III. CONCLUSION

For the reasons explained above, and pursuant to Federal Rule of Civil Procedure 23, the Court finds that the settlement agreement is fair, reasonable, and adequate. Therefore, the Court

approves the settlement and certifies the settlement classes. Accordingly, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

1. The Court has jurisdiction over the subject matter of the Action, Class Representatives, all Settlement Class Members, and Defendants.

2. The Court **APPROVES** the settlement agreement between the parties. (D.N. 113-1)

3. Plaintiffs' motion for settlement approval (D.N. 132) is **GRANTED.**

4. Plaintiffs' motion for attorney fees and expenses, settlement administration expenses, and class representative awards (D.N. 128) is **GRANTED**.

5. The Classes preliminarily certified by this Court are hereby finally certified for settlement purposes only under Fed. R. Civ. P. 23. The Classes shall consist of:

    a. <u>The Excess Coverage Class</u>: All persons who have or had a HEL serviced by Chase or a HELOC serviced by Chase that was acquired by Chase through Bank One, and who were sent an initial flood insurance "cycle letter" by Chase at any time from December 23, 2009, to November 13, 2011, inclusive, excluding any person with HELOCs secured by property in California.

    b. <u>The Commissions Class</u>: All persons who either have or had a HEL serviced by Chase and were charged for lender-placed flood insurance that was effective at any time from June 11, 2008, to December 31, 2009, or have or had a HELOC serviced by Chase that was acquired by Chase through Bank One, and were charged for lender-placed flood insurance that was effective at any time from December 7, 2007, to December 31, 2009, excluding any persons with HELOCs secured by property in California.

6. The Settlement Agreement shall provide the exclusive remedy for Settlement Class Members (and any successors-in-interest) with respect to any and all claims that were asserted or could have been asserted in the Action, as defined in the Settlement Agreement, against Defendants and all Released Parties, as defined in the Settlement Agreement

7. Those persons who timely submitted a valid request to exclude themselves from the Settlement are not members of the Settlement Classes, shall have no rights or interests with respect to the Settlement, and shall not be bound by any orders or judgments entered regarding the Settlement. (D.N. 134-4)

8. The Court finds that dissemination of the Class Notice of this Action, and of the proposed Settlement, was given to the Settlement Classes by the best means practicable under the circumstances, including mailing the Class Notice to the Settlement Class Members via first-class U.S. Mail, publishing the Published Notice in a nationwide newspaper, and posting the Class Notice, Settlement Agreement, establishment of a toll-free phone number and other relevant documents on the Settlement website.

   a. The Class Notice provided Settlement Class Members with all required information, including (among other things): (1) pendency of this action; (2) summary of the Action and the claims asserted; (3) terms of the proposed settlement; (4) a clear definition of the Commissions Class and the Excess Coverage Class; (5) their rights under the proposed settlement; (6) instructions for submitting a claim and the deadline for doing so; (7) an explanation of Settlement Class Members' opt-out rights, including a date by which

       Settlement Class Members must opt out, and information regarding how to do so; (8) instructions as to how to object to the Settlement and a date by which Settlement Class Members must object; (9) their right to appear at the final approval hearing, including the date, time, and location of the hearing; (10) the internet address for the settlement website and the toll-free number that Settlement Class Members could call to obtain additional information about the Settlement; (11) contact information for the co-lead law firms representing the Settlement Classes; and (12) the amount that Class Counsel may seek in attorneys' fees and expenses, as well as the proposed class representative service awards.

   b. The form and method of notifying the Settlement Classes fully, fairly, accurately, and adequately advised Settlement Class Members of all relevant and material information concerning the Action and the terms of the Settlement, and fully satisfied the requirements of due process and Federal Rule of Civil Procedure 23.

9. The Parties and Class Members are hereby directed to implement and consummate the Settlement Agreement according to its terms and provisions. Class Counsel shall take all steps necessary and appropriate to provide Class Members with the benefits to which they are entitled under the terms of the Settlement Agreement.

10. The Court **AWARDS** administrative expenses in an amount not to exceed $100,000.

11. The Court **APPROVES** the requested class representative award of $5,000 to be paid to each Class Representative as provided for in the Settlement Agreement. The Class

Representatives have been active participants throughout the litigation and settlement process.

12. The Court **AWARDS** attorney's fees and expenses to Class Counsel in the amount of $650,000.

13. This Action is hereby **DISMISSED** with prejudice, with fees and costs awarded solely as provided in the Settlement Agreement except that the Court shall retain jurisdiction to the extent necessary to administer and enforce the Settlement Agreement.

14. The Court reserves continuing and exclusive jurisdiction over the Parties, as defined in the Settlement Agreement, and Settlement Class Members to administer, supervise, construe and enforce the Settlement Agreement in accordance with its terms for the mutual benefit of the Parties and Settlement Class Members.

October 13, 2016

**David J. Hale, Judge**
**United States District Court**